# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| JAGER PRO, LLC | PLAINTIFF |
|---|---|
| v. | No. 4:19-cv-107-DPM |
| BULL CREEK WELDING AND FABRICATION, INC. | DEFENDANT |
| JAGER PRO, LLC | PLAINTIFF |
| v. | No. 4:19-cv-108-DPM |
| TUSK INNOVATIONS, INC. | DEFENDANT |

## ORDER

**1. Summary.** Feral hogs are a growing problem. The parties have solutions, which come in the form of pens for catching groups of the hogs. Jager Pro's solution is protected by three patents, Tusk's by one, Bull Creek's by none. Jager Pro says Tusk and Bull Creek are infringing; Tusk counters that Jager Pro is the infringer on its patent. The mechanisms for discerning that animals are in the pen, and for closing the gate to trap them, are important parts of the companies' solutions. So, too, are how the pens' fencing panels fit together and move. The parties ask the Court to construe parts of their patents' claims about these mechanisms. 35 U.S.C. § 112(a); *Phillips v. AWH Corporation*, 415 F.3d 1303, 1311–14 (Fed. Cir. 2005).

**2. Person Skilled In The Art.** The standard is what the claim terms meant to a person of ordinary skill in the art—given the patents' specifications and prosecution histories—when the patents issued. *Phillips,* 415 F.3d at 1313-14. This person would have at least a bachelor's degree in mechanical or civil engineering. She would also have some experience dealing with wild animal traps that use wireless monitoring devices and communication systems.

**3. Jager Pro's Patents.** There are seven disputed terms in the Jager Pro's '126, '228, and '339 patents. Three are easily settled. The Court must give claim terms their ordinary and customary meaning, against the backdrop of the specification and the prosecution history, unless Jager Pro acted as its own lexicographer or disavowed the term's full scope. *Thorner v. Sony Computer Entertainment America LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012). Nothing in the prosecution history or specification suggests that Jager Pro took either step on three terms: (1) a gate, (2) upon receipt, or (3) wireless detection signal. The meaning of each is also readily apparent to this lay reader. They require no expansive claim construction. *Phillips,* 415 F.3d at 1314.

- The terms **"a gate"**, **"upon receipt"**, and **"wireless detection signal"** have their plain and ordinary meanings.

## The Camera/Detection Terms

What does the camera do? And what does it mean to detect? The next three disputed Jager Pro terms are about detection and the camera—the core disagreement. These terms are "is detected by a camera," "camera assembly," and "detection of a presence of the plurality of [feral pigs/wild animals] within the enclosure by the camera assembly." In their overarching contention, Bull Creek and Tusk say all three terms must be construed in a way that accounts for the camera itself being able to identify and count the hogs.

Reading Jager Pro's patents as a whole, it's clear that this invention can operate in at least four ways or modes. They are: manual, notification-manual, non-camera-automatic, and camera-automatic. *№ 17-1 at 19–23; № 17-2 at 18–22; № 17-3 at 19–23.* In manual mode: the camera is continuously streaming the inside of the pen; a person chooses to view the footage; and she decides whether to close the gate. In notification-manual mode: the camera records; the invention notifies a person that something is present; she views this footage on another device; and she decides whether to close the gate. In non-camera-automatic mode: the camera may or may not be doing anything to assist in the closing of the gate; the gate is set to close automatically based upon a certain date or when food in a feeder inside the pen drops below a certain level. Last, in camera-automatic mode: the camera senses the presence of something; identifies feral hogs;

determines that there is a critical mass of them; and triggers the gate to close.

Drawing on the various modes, Bull Creek and Tusk argue that the camera/detection terms must have a construction that accounts for identifying and counting feral hogs because "cameras do not ordinarily detect anything." № 31 at 13. They point to the Jager Pro patents' claim terms, specifications, and prosecution histories. The specification and prosecution history provide important context as the Court construes the disputed claims. *Thorner*, 669 F.3d at 1365.

**"Is detected by a camera."** Jager Pro's '126 patent contains this term. First, the '126 patent's specification implies the invention's ability to perform in all four modes. № 17-2 at 18–21. In camera-automatic mode, the camera plays a part in triggering the gate to close once a critical mass of hogs is reached. № 32 at 24. But, in non-camera-automatic mode, the gate will close once a predetermined amount of food or a certain date is met. That distinction is important. In situations where the food level or a date is the key fact, the camera may or may not do any identifying or counting. In the camera-automatic mode, the camera plays a part in triggering the gate to close; and the camera may be identifying and counting. In light of the specification, the invention protected by the '126 patent has this flexibility of embodiments. The specification provides that identify-and-count context because the claim term does not

-4-

"stand alone," but must be read in light of the specification. *Phillips*, 415 F.3d at 1315–16. The problem with reading an identify-and-count limitation into the claim itself is that it limits the claim term for the other embodiments. The Court does not read limitations from the specification into the claims, nor does it read the claims restrictively, unless Jager Pro demonstrated a clear intention to that end. *Hill-Rom Services, Inc. v. Stryker Corporation*, 755 F.3d 1367, 1371–72 (Fed. Cir. 2014). Nothing in the record or the '126 patent suggests such an intention.

Bull Creek and Tusk argue alternatively that the prosecution history reveals that an identify-and-count limitation must be read into the claim term. The Court disagrees. The prosecution history shows that the Examiner was aware of both manual and automatic embodiments, and highlights how the specification could, "at best," provide for such embodiments. *№ 32-1 at 7; № 32 at 24.* The history also shows that a motion sensor was originally in the '126 patent claims, dropped out, and then was claimed in the '228 patent. *№ 17-1 at 22 (col. 8:31).* Although the Examiner rejected the version of the '126 patent with a motion sensor, Jager Pro eventually obtained the '126 patent, which covered both manual and automatic embodiments without a clear narrowing of the claim scope during the prosecution. *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1353 (Fed. Cir. 2019). Without a clear and unambiguous disavowal of scope

during the prosecution history, limitations are not read into the claim term. *Continental Circuits LLC v. Intel Corporation*, 915 F.3d 788, 797 (Fed. Cir. 2019). No such disavowal occurred.

Therefore, in light of the specification and the prosecution history, there is no need to read an identify-and-count limitation into the claim term. Here's the construction:

- The term **"is detected by a camera"** has its plain and ordinary meaning.

**"Camera assembly."** This term is in Jager Pro's '228 and '339 patents. Here again, Bull Creek and Tusk argue this term must be construed to include identify-and-count limitations for three reasons: the camera alone can't identify or count; the specification of both patents does not provide the guiding light needed to read the claim term; and this construction is supported by the prosecution history. The Court again disagrees.

In regard to the four modes, the '228 patent's specification and the '339 patent's specification are almost identical to the '126 patent's specification. *Compare № 17-1 at 19–22 and № 17-3 at 19–22 with № 17-2 at 18–21.* Bull Creek and Tusk argue that the camera assembly must include technology—apart from the camera—that can identify and count hogs. They point out that the terms "camera" and "camera assembly" are different because one term contains a word the other doesn't; to account for the word "assembly," limitations must be read into the term. But the term

"camera assembly" is read in light of the specification; it does not stand alone. The specification in the '228 and '339 patents speaks to a camera's ability to detect and monitor within the pen. *№ 17-1 at 21 (col. 5:66–67 & 6:1–57) & № 17-3 at 21 (col. 6:4–62).* It also speaks to the camera's ability to send images to a computer for wireless transmission. *№ 17-1 at 21 (col. 6:29–48) & № 17-3 at 21 (col. 6:34–53).* The term's meaning is clear in context: the camera assembly may—but need not—include other devices to carry out the claimed function of the invention. The prosecution history does not reveal any clear disavowal by Jager Pro to limit the claim, or to act as a lexicographer. *Thorner,* 669 F.3d at 1365. Here's the construction:

- The term **"camera assembly"** has its plain and ordinary meaning.

**"Detection of a presence of the plurality of [feral pigs/wild animals] within the enclosure by the camera assembly."** Jager Pro's '228 and '339 patents contain this term. And a similar term appears in the '126 patent, which the Court will address below in a means-plus-function analysis. This term knits together the disputed issues: detection and the camera assembly. Bull Creek and Tusk focus on the counting: who or what is discerning that the plurality of animals is in the pen? They again advance their three arguments about a standard camera's inability to detect or identify, the specification's unhelpfulness, and the prosecution history. *№ 31 at 27–29.* The Court again disagrees.

First, this claim term doesn't stand alone; it is read in light of the specification. And the specification in the '228 and '339 patents provides a guide to the invention's four possible ways of operating. But, to read that the camera assembly itself must be doing the identifying and the counting ignores the modes when the camera may not be doing these things. Absent a clear intention by Jager Pro on this score, the Court does not read limitations from the specification into the claims or read the claims restrictively. *Hill-Rom Services, Inc.*, 755 F.3d at 1371–72. Second, the specification speaks to a camera assembly's ability to detect and monitor within the pen, as well as its ability to send images to a computer for wireless transmission. № 17-1 at 21 (col. 6:29–48) & № 17-3 at 21 (col. 6:34–53). This description provides the context: again, the camera assembly may — but need not — include other devices to carry out the claimed function of the invention. Last, the prosecution history does not reveal any clear disavowal by Jager Pro to either limit the claim, or to act as a lexicographer. *Thorner*, 669 F.3d at 1371. Here's the construction:

- The term **"detection of a presence of the plurality of [feral pigs/wild animals] within the enclosure by the camera assembly"** has its plain and ordinary meaning.

## Means-Plus-Function Terms

The last Jager Pro term—"means for detecting the presence of a plurality of animals therein the enclosure"— is in the '126 patent. This term invokes the means-plus-function analysis. 35 U.S.C. § 112(f); *Biomedino, LLC v. Waters Technologies Corporation*, 490 F.3d 946, 950 (Fed. Cir. 2007). The Court must do two things: identify the claimed function; then identify the structure disclosed in the specification that corresponds to that function. *Ibid*. The parties agree on the first issue. The claimed function of the term is "detecting the presence of a plurality of animals therein the enclosure." *№ 30 at 20; № 31 at 29*. But the parties disagree on what the specification identifies as the corresponding structure.

Tusk and Bull Creek again say that a corresponding structure must include a smart camera, one that can identify and count, or a basic camera with other technology having detection and identification abilities. *№ 31 at 29–31; № 33 at 25–27*. They repeat their three foundational points: a basic camera alone does not detect or identify; the specification does not disclose those abilities; and the claim is therefore indefinite. *№ 31 at 29–30; № 33 at 26–27*. The Court is unpersuaded.

A means-plus-function claim encompasses all structures in the specification corresponding to that element and equivalent structures. *Micro Chemical, Inc. v. Great Plains Chemical Company, Inc.*, 194 F.3d 1250,

1258 (Fed. Cir. 1999). The Court cannot incorporate a structure from the written description beyond what is necessary to perform the claimed function. *Ibid.* And the Court must construe the means-plus-function term by looking to the specification, and interpreting the term in light of the corresponding structure, material, or acts described in it. *IPCom GmbH & Co. v. HTC Corporation,* 861 F.3d 1362, 1369 (Fed. Cir. 2017).

The '126 patent specification identifies and links the means-plus-function claim to the corresponding structure. *№ 30 at 21; № 30-1 at 20 (col. 5:54–67 & 6:1).* The means to detect the animals is what is being claimed, and the '126 patent's specification provides a corresponding structure that closely tracks the means. *Ibid.; Biomedino, LLC,* 490 F.3d at 950. The corresponding structure may embrace more than the preferred embodiment, and there's no sound reason to narrow the means-plus-function term. *Micro Chemical, Inc.,* 194 F.3d at 1258. Here's the construction:

- The term **"means for detecting the presence of a plurality of animals therein the enclosure"** has a claimed function of detecting the presence of a plurality of animals in the enclosure—with a corresponding structure of a camera, which may be a closed-circuit camera, an internet protocol (IP) web camera, an infrared camera, a night vision camera, a thermal imaging camera, and* equivalents.

---

* The Court prefers "and" instead of "and/or." It's more precise and more faithful to 35 U.S.C. § 112(f). *See Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1347 (Fed. Cir. 2015).

4. **Tusk's Patent.** There are two disputed terms in Tusk's '710 patent: (1) "a portable modular corral adapted to be transported to and assembled at a trapping site for capturing and restraining animals" and (2) "means for removably pivotally coupling the panel to adjacent panels when the corral is deployed."

The first term requires the standard *Phillips* analysis. Jager Pro says that the term does not have a plain and ordinary meaning because of a limiting preamble. The '710 patent repeats the same preamble to Claim 1 and Claim 4. It states: "A portable modular corral adapted to be transported to and assembled at a trapping site for capturing and restraining animals, the corral comprising:" № 30-4 at 39 (col. 14:39–41); № 30-4 at 40 (col. 15:17–19).

Generally, a preamble is not limiting. That general rule gives way, though, in two situations: (1) the preamble and the body define the subject matter of the claimed invention or (2) the preamble is necessary to give life to the claim. *Allen Engineering Corporation v. Bartell Industries, Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). The preamble of the '710 patent describes only the invention's purpose, and the claim body defines a structurally complete invention. Therefore, neither exception applies. *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997). Nothing suggests that

the preamble is limiting; nor does it appear that Tusk was a lexicographer or disavowed another term to get patent approval.

- The term "**a portable modular corral adapted to be transported to and assembled at a trapping site for capturing and restraining animals**" has its plain and ordinary meaning.

The second disputed '710 term is "means for removably pivotally coupling the panel to adjacent panels when the corral is deployed." This murky term needs construction. It also requires the means-plus-function analysis. Jager Pro says that Tusk hasn't followed that analysis in identifying the claimed function and the corresponding structure. № 30 at 25–26. Tusk responds that its construction is clearer. See the parties' claims chart. № 34 at 5.

Neither side's argument is entirely persuasive. Jager Pro has identified a clear function for the term, but the corresponding structure is too narrow and incorporates too much from the specification. *Micro Chemical, Inc.*, 194 F.3d at 1258. Tusk's construction is more concise, but fails to identify a structure in the specification that would allow one to easily understand what the claim means. *Biomedino, LLC*, 490 F.3d at 950.

In its sur-reply brief, however, Tusk identified the needed root in the '710 specification:

> Preferably the various fence panels **24** are generally rectangular, as best seen in FIG. **3**. Each fence panel has opposite ends provided with hinge structure explained and illustrated in conjunction with FIGS. **4** and **5** that pivotally couples adjacent panels together when the corral **22** is deployed.

№ *33 at 29;* № *30-4 at 36 (col. 8:38–43).* Tusk added that the patent states it is preferred that the coupling means be hinged or pivotally coupled together. № *33 at 29.* At the hearing, Jager Pro tentatively agreed that incorporating sleeves into Tusk's proposed corresponding structure would address Jager Pro's objection. Here's the construction:

- The term "**means for removably pivotally coupling the panel to adjacent panels when the corral is deployed**" has a claimed function of coupling a removable and pivotable panel to an adjacent panel when the corral is deployed — with a corresponding structure of fence panel sleeves, that are located near the top and bottom of each panel's side and that hinge at opposite ends and couple adjacent panels together, allowing the panels to flex or pivot, and equivalents.

Appendix A to this Order contains the complete list of terms and how they are construed.

So Ordered.

*W.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

19 February 2020

# APPENDIX A

| Term in Jager Pro Patents | Construction |
|---|---|
| "a gate" | plain and ordinary meaning |
| "upon receipt" | plain and ordinary meaning |
| "wireless detection signal" | plain and ordinary meaning |
| "is detected by a camera" | plain and ordinary meaning |
| "camera assembly" | plain and ordinary meaning |
| "detection of a presence of the plurality of [feral pigs/wild animals] within the enclosure by the camera assembly" | plain and ordinary meaning |
| "means for detecting the presence of a plurality of animals therein the enclosure" | **Claimed Function:** detecting the presence of a plurality of animals in the enclosure<br><br>**Corresponding Structure:** a camera, which may be a closed-circuit camera, an internet protocol (IP) web camera, an infrared camera, a night vision camera, a thermal imaging camera, and equivalents |

| Term in Tusk Patent | Construction |
|---|---|
| "a portable modular corral adapted to be transported to and assembled at a trapping site for capturing and restraining animals" | plain and ordinary meaning |
| "means for removably pivotally coupling the panel to adjacent panels when the corral is deployed" | **Claimed Function:** coupling a removable and pivotable panel to an adjacent panel when the corral is deployed<br><br>**Corresponding Structure:** fence panel sleeves, that are located near the top and bottom of each panel's side and that hinge at opposite ends and couple adjacent panels together, allowing the panels to flex or pivot, and equivalents |